UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES WEEDN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. CIV-24-957-R |
| | ) |
| TOMMIE JOHNSON, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant Sheriff Tommie Johnson's Motion to Dismiss [Doc. No. 3]. Plaintiff James Weedn responded [Doc. No. 6], and Sheriff Johnson replied [Doc. No. 7]. For the reasons set forth below, Sheriff Johnson's Motion is GRANTED.

### I.     Background

Weedn's Petition alleges the following: Weedn was employed with the Oklahoma County Sheriff's Office for over 24 years, holding the rank of Sergeant/Master Instructor [Doc. No. 1-1 ¶ 5]. He was assigned to the South Campus of Metro Technologies Center ("MetroTech") as a law enforcement services instructor associated with the Basic Peace Officer Certification Academy ("BPOC"). Doc. No. 1-1 ¶ 6. His assignment was pursuant to a contract between MetroTech and Oklahoma County in which the Sheriff's Office was to provide instructors for BPOC. *Id*. ¶ 11. While at MetroTech, Weedn worked closely and developed a friendship with the director of BPOC, Amanda English, who was later terminated and replaced by Kyla Loggins. *Id*. ¶¶ 7-8, 10, 13-16.

Weedn's relationship with Ms. Loggins quickly soured, as she stripped him of his responsibilities and acted unprofessionally and offensively to students in addition to being unqualified to teach the courses. *Id*. ¶¶ 17-18. He relayed these concerns to Training Division Commander Jason Ruegge. *Id*. ¶ 18.

On May 12, 2023, MetroTech Site Director Zac Gleason instructed Mr. Ruegge to remove Weedn as Range Master. *Id*. ¶ 21. On June 6, 2023, Weedn was called into a meeting with Sheriff Johnson, Undersheriff Jim Anderson, Major Brandon Holmes, and Mr. Ruegge. *Id*. ¶ 22. At the meeting, Sheriff Johnson informed Weedn that his relationship with Ms. English was problematic for MetroTech and that his continued presence at MetroTech jeopardized the relationship and contracts between the Sheriff's Office and MetroTech. *Id*. ¶ 23.

Ultimately, because of his relationship with Ms. English and his unwillingness to condone Ms. Loggins' unprofessional conduct, Weedn was given the choice to either retire or be terminated. *Id*. ¶ 24. Because the latter option would have sacrificed the retirement income commiserate with the length of his tenure, Weedn elected to retire. *Id*. ¶ 25.[1]

Weedn originally filed this action in state court, asserting a single claim pursuant to 42 U.S.C. § 1983 for violation of his Fourteenth Amendment right to due process. *Id*. at p. 4. He alleges that he was unlawfully deprived of his interest in continued employment

---

[1] Sheriff Johnson disputes whether termination would have resulted in a loss of retirement income. Doc. No. 3 at p. 6. Okla. Stat. tit. 19 § 956.2(A)(4) appears to support this position, although for purposes of ruling on the present Motion, the matter is not pertinent.

when he was given the option of retiring or being terminated without notice or an opportunity to be heard. *Id*. ¶¶ 32-33.

Sheriff Johnson removed the case [Doc. No. 1] and subsequently moved to dismiss Weedn's Petition[2] pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted. Doc. No. 3. Sheriff Johnson asserts the defense of qualified immunity and contends that he did not violate Weedn's rights because Weedn either voluntarily relinquished his interest in continued employment when he retired, or in the alternative, was afforded adequate process. *Id*.

## II.     Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), the Court must determine whether Weedn has stated a claim upon which relief may be granted. A complaint must contain enough "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citations omitted). The factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). In making its dismissal determination, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe the allegations in the light most favorable to the plaintiff". *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (internal

---

[2] The Court refers to Weedn's pleading as his "Petition" because the action was originally filed in state court.

3

citations and quotation marks omitted). The Court, however, need not accept as true conclusory allegations. *Erikson v. Pawnee Cty. Bd. of Cty. Commissioners*, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

### III. Discussion

Sheriff Johnson raises the defense of qualified immunity, which shields public officials sued in their individual capacities "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). When this defense is raised, officials enjoy a presumption of immunity—as such, immunity is "the norm in private actions against public officials…" *Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013) (internal quotation marks and citations omitted); *see also Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017) ("[Q]ualified immunity protects all officials except those who are plainly incompetent or those who knowingly violate the law." (internal quotation marks and citations omitted)); *Lewis v. Tripp*, 604 F.3d 1221, 1230 (10th Cir. 2010) ("If qualified immunity is to mean anything, it must mean that public employees who are just doing their jobs are generally immune from suit.").

However, "'[a]sserting a qualified immunity defense via a Rule 12(b)(6) motion…subjects the defendant to a more challenging standard of review than would apply on summary judgment.'" *Myers v. Brewer*, 773 F. App'x 1032, 1036 (10th Cir. 2019) (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)). This is because "'[a]t the motion to dismiss stage, it is the defendant's conduct *as alleged in the complaint* that

4

is scrutinized for objective legal reasonableness.'" *Id*. (emphasis in original). Regardless of the posture, "[a] plaintiff can overcome this presumption of immunity only by carrying the heavy burden of showing both that (1) the defendant[] in question violated one of his [statutory or] constitutional rights, and (2) the infringed right at issue was clearly established at the time of the allegedly unlawful activity…" *Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir. 2011) (citations omitted). "[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d 1123, 1134-35 (10th Cir. 2016) (citations omitted).

The Court has discretion in determining which element to analyze first, *id*. at 1135, and elects to begin with the first prong. Accordingly, the initial inquiry is whether Weedn plausibly alleged that Sheriff Johnson deprived him of his right to due process when he was given the option to retire or be terminated.

"The Fourteenth Amendment to the United States Constitution provides that a State shall not 'deprive any person of life, liberty, or property, without due process of law.'" *Moore v. Bd. of Cty. Commissioners of Cty. of Leavenworth*, 507 F.3d 1257, 1259 (10th Cir. 2007) (quoting U.S. Const. amend. XIV, § 1). The determination of whether a party's procedural due process rights have been violation is a two-step inquiry. *Id*. (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). The first step "asks whether there exists a liberty or property interest which has been interfered with by the State[.]" *Id*. The second step "examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id*.

"The standard for the existence of a property right in employment is whether the plaintiff has a legitimate expectation of continued employment." *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998) (citations omitted). "'The existence of a property interest is defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and [] support claims of entitlement to those benefits.'" *Id.* (quoting *Driggins v. City of Okla. City*, 954 F.2d 1511, 1513 (10th Cir.), *cert. denied*, 506 U.S. 843 (1992)). "[I]f a statute, regulation, or policy specifies the grounds on which an employee may be discharged, or restricts the reasons for discharge to 'just cause shown,' then the employee has a right to continued employment until such grounds or causes are shown." *Asbill v. Hous. Auth. of Choctaw Nation of Okla.*, 726 F.2d 1499, 1502 (10th Cir. 1984).

As for the second step of the due process inquiry, the requisite process required to terminate an employee with a protected interest in continued employment includes "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).

Beginning with the first step, Sheriff Johnson concedes, Doc. No. 3 at p. 5, and the Court independently finds, that during his tenure with the Sheriff's Department, Weedn held a protected property interest in continued employment established by Okla. Stat. tit. 19 § 547(A). Under the state statute, Sheriff Johnson was limited in his ability to terminate Weedn, because he could be fired only for "just cause." Okla. Stat. tit. 19 § 547(A).

Accordingly, at the time Weedn was given the choice to retire or face termination, he held a protected property interest that entitled him to due process.

While Sheriff Johnson concedes the existence of that interest at the time Weedn was given the choice between retirement and termination, he contends that Weedn voluntarily relinquished his protected interest when he elected to retire rather than face termination proceedings. Doc. No. 3 at pp. 5-7. Weedn acknowledges that he elected to retire, however, he contends that this choice was not made voluntarily, and that he was therefore constructively discharged without due process.

"A resignation will be involuntary and coerced when the totality of the circumstances indicate the employee did not have the opportunity to make a free choice." *Parker v. Bd. of Regents of Tulsa Junior Coll.*, 981 F.2d 1159, 1162 (10th Cir. 1992) (internal citations omitted). The inquiry into the voluntariness of a resignation is done using an objective standard. *See Yearous v. Niobrara Cty. Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997). In *Parker*, the Tenth Circuit adopted four factors for the Court to consider when determining the voluntariness of a resignation:

> (1) Whether the employee was given some alternative to resignation;
> (2) Whether the employee understood the nature of the choice he was given;
> (3) Whether the employee was given a reasonable time in which to choose; and
> (4) Whether he was permitted to select the effective date of resignation.

*Parker*, 981 F.2d at 1162 (citing *Stone v. Univ. of Mary. Med. Sys. Corp.*, 855 F.2d 167, 174 (4th Cir. 1988)).

Beginning with the first factor, "[a] choice between resignation or termination does not establish that the resignation was involuntary, unless the employer lacked good cause to believe that there were grounds for termination." *Id*. at 1162. To show good cause, Sheriff Johnson must have had "adequate reasons" to threaten termination. *Id*. ("The evidence indicates that there were adequate reasons…for defendants to threaten plaintiff with termination.").

Sheriff Johnson contends that he had good cause to believe there were grounds for termination and asserts that based on "the four corners of the Petition, Weedn has essentially pleaded himself out of court and has no viable constitutional claim." Doc. No. 3 at p. 7. For support, Sheriff Johnson directs the Court to paragraphs 17 through 21, and 23. *Id*. at pp. 6-7.

Paragraphs 17-20 form the basis of Weedn's issues with Ms. Loggins. He alleges that after she replaced Ms. English, she removed Weedn's responsibilities "despite not having qualifications or authority to do so" and that he complained to Mr. Ruegge about Ms. Loggins' unprofessionalism, offensive nature, and lack of qualification for the position. Doc. No. 1-1 at ¶¶ 17-18. Additionally, Weedn recounts an incident in which a student told him that Ms. Loggins asked him to provide statements supporting allegations about another student that was accused of using drugs in hopes that the student would be removed. Weedn claims that he advised the student "to only tell the truth" and "that any statement he give report what [the student] actually observed." *Id*. ¶ 20. In paragraph 21, Weedn alleges that the Site Director for MetroTech personally requested that Weedn be removed as Range Master. *Id*. ¶ 21. Moreover, in paragraph 23, Weedn alleges that he was

8

told by Sheriff Johnson that his continued presence at MetroTech jeopardized the Sheriff's Office's relationship and contracts with MetroTech. *Id*. ¶ 23.

Weedn's counter is that the Petition does not allege facts sufficient to meet the standard of "just cause" for termination because Sheriff Johnson acted in bad faith. Doc. No. 6 at p. 7. Additionally, Weedn contends that Sheriff Johnson's threat of termination was the result of political convenience and capitulation to MetroTech's leadership rather than job performance. *Id*. Finally, Weedn argues that no assertions in the Petition supports a finding that Weedn was fired because of comments made or issues associated with MetroTech employees. *Id*.

Weedn's rebuttal is not supported by the facts alleged in the Petition. This is insufficient for the Court's review at this stage. *See Mecca v. United States*, 389 F. App'x 775, 781 (10th Cir. 2010) (The Court's "function on a Rule 12(b)(6) motion is…to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.") (quoting *Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993)). For example, it is not until his Response that Weedn articulates that his bad faith allegation stemmed from Sheriff Johnson's lack of good cause to believe there were grounds to threaten termination. Doc. No. 6 at p. 7. In fact, in the Petition, Weedn does not allege that Sheriff Johnson acted in bad faith in his reasoning for threatening termination or that he threatened termination because of political convenience or capitulation to MetroTech as argued in his Response. Instead, Weedn associates "bad faith" with the fact that termination could have cost Weedn his retirement income. Doc. No. 1-1 ¶ 25.

9

On the other hand, the Petition *does* allege that Weedn voiced his displeasure with Ms. Loggins as a supervisor, including by questioning her professionalism and qualifications. *Id*. ¶ 18. Weedn also pled that he was assigned to MetroTech pursuant to a contract between the Sheriff's Office and MetroTech to provide instructors for BPOC. *Id*. ¶ 11. He alleges that Sheriff Johnson believed his relationship with Ms. English and continued presence at MetroTech jeopardized the contracts between the Sheriff's Office and MetroTech. *Id*. ¶ 23. This belief is supported by the allegation that MetroTech's Site Director asked Mr. Ruegge to remove Weedn from MetroTech. *Id*. ¶ 21. Finally, Weedn claims that he was given the option to retire or be terminated for two reasons: (1) his relationship with Ms. English and (2) his refusal to condone Ms. Loggins' unprofessional conduct. *Id*. ¶ 24.

This factor has been analyzed by many courts across various jurisdictions, but the Court was not made aware of, and could not independently find, a case in which the facts precisely resemble those presented here. However, the United States District Court for the District of Massachusetts was faced with a similar claim and evaluated the first factor using both *Stone* and *Parker* for support. *See Monahan v. Romney*, Civ. No. 06cv10921-NG, 2009 WL 10694327, at *8 (D. Mass. Sep. 3, 2009); *aff'd*, 625 F.3d 42 (1st Cir. 2010), *cert. denied*, 563 U.S. 976 (2011). The Court finds the *Monahan* Court's analysis helpful in this case.

In *Monahan*, the plaintiff sued then-Governor Mitt Romney and his staff, alleging that they had deprived him of a protected property interest in continued employment without due process. *Id*. at *1. In pertinent part, the plaintiff was appointed to the Massachusetts Civil Service Commission by Governor Romney. *Id*. at *2. This

10

appointment was pursuant to a background application, within which, the plaintiff failed to note that he had made a controversial real estate transaction with a leader of a crime organization some 23 years prior. *Id*. Believing that the revelation of this prior transaction would reflect poorly upon Governor Romney and knowing that the local newspaper was preparing a story on the incident, Governor Romney's staff called the plaintiff and asked him to resign. *Id*. at *3-4. The plaintiff noted that the transaction was public knowledge, that he thought the governor knew about it, and that he was cleared of any wrongdoing. *Id*. at *3. Despite this, Governor Romney's staff persisted, and the plaintiff eventually relented and resigned. *Id*. at *5.

The *Monahan* Court determined that the plaintiff held a protected interest, which could only be deprived "for cause" in accordance with a state statute. *Id*. at *7. Citing *Parker*, the Court ruled that the plaintiff was given an alternative to resignation in the form of removal for cause under the statute. *Id*. at *8. Even noting that the choice "was not very attractive," it reasoned that there was "an arguable basis" for cause to terminate the plaintiff based on the facts presented. *Id*. Specifically, the *Monahan* Court noted that the prior transaction reflected poorly on the plaintiff's judgment and integrity, as well as the Commission's public image. *Id*. Accordingly, the Court held that the threat of removal for cause did not make the resignation coerced or involuntary, and thus the plaintiff's claim was dismissed. *Id*.

Comparing Weedn's claim to the plaintiff's claim in *Monahan*, the Court notes several similarities. First, both plaintiffs could only be fired for cause (or "just cause" in Weedn's case), entitling them to protected interests in continued employment. Second,

despite this protected interest and corresponding right to due process, both plaintiffs opted to resign when faced with the option of resignation or termination. Third, neither plaintiff committed a blatant act of wrongdoing or crime, but rather harmed the relationships and image of their employer. In the *Monahan* plaintiff's case, his prior transaction potentially harmed the relationship of the governor and the voters. In Weedn's case, his refusal to limit or terminate his relationship with Ms. English and condone the conduct of Ms. Loggins potentially endangered the relationship between his employer and a contractual partner in MetroTech.

In *Monahan*, the Court was unable to say definitively whether there were grounds to threaten termination—that is, whether the prior transaction (and failure to report that prior transaction) constituted "cause" under the statute. *Id*. Likewise, here, the Court is presented with conflicting and unpersuasive definitions of "just cause," although for purposes of the present Motion, a precise definition is unnecessary. Similar to the plaintiff in *Monahan*, Weedn's problematic relationship and refusal to cooperate with a supervisor that he viewed and unprofessional and unqualified—by his own account—jeopardized the contracts and relationship between his employer and MetroTech. Accordingly, Sheriff Johnson had an "arguable basis" for believing that he could lawfully terminate Weedn. Whether this belief would have ended up being correct is not pertinent. *See Id*. ("Whether a 'for cause' dismissal would have ultimately succeeded is irrelevant; there was enough information to have started such proceedings.") The point is whether it was objectively reasonable for an employer to believe that an employee's conduct that caused harm to a contract and relationship constituted just cause to threaten termination. This Court finds

that it is, and accordingly finds both that Weedn was given an alternative to resignation in the form of access to post-deprivation process, and that Sheriff Johnson had good cause to believe that he had grounds to threaten termination.

As pled, the second, third, and fourth factors allege that Weedn's retirement decision was voluntary. To Weedn, the face of the Petition demonstrates "that he did not understand he was potentially waiving his rights as none were articulated to him, that he was given NO time to make his decision, and that he was not allowed to choose the effective date of termination." *Id*. On the contrary, the face of the Petition shows that Weedn was under the impression that termination could result in the relinquishing of the retirement income commiserate with the length of his tenure, showing that he understood the nature of his decision. *Id*. ¶ 25.

Moreover, nowhere in the Petition does Weedn mention whether he was or was not given time to choose between termination and retirement, nor is there an allegation regarding Weedn's ability to select his own effective date of termination. Like the above, the first time the Court is made aware of these allegations is in Weedn's Response. Doc. No. 6 at p. 6. Although this additional information would assist in the voluntariness determination, the Court cannot go beyond the pleadings when ruling on Sheriff Johnson's Motion. *See Mecca*, 389 F. App'x at 781; *see also Aero Caribe De Honduras S. De R.L. v. Aircraft Structures Int'l Corp.*, No. CIV-10-230-M, 2010 WL 3326711, at *2 (W.D. Okla. Aug. 23, 2010) ("The court should not consider facts or matters outside the complaint, otherwise, the motion ceases to be appropriate under Rule 12(b)(6) and is more properly considered a motion for summary judgment." (citations omitted)).

13

Applying the present facts to the factors articulated in *Parker*, Sheriff Johnson had good cause to believe he had grounds to threaten termination such that it was appropriate to begin termination proceedings. Additionally, Weedn understood the nature of his decision, and the Petition is silent as to the final two factors. Accordingly, under the totality of the circumstances as alleged in the Petition, Weedn voluntarily relinquished his protected interest in continued employment when he retired, and therefore fails to state a plausible claim for relief. Because Weedn failed to satisfy the first prong of the qualified immunity inquiry, the Court need not reach whether Weedn's right was clearly established. As such, Sheriff Johnson is entitled to qualified immunity.

### IV.  Conclusion

Accordingly, Sheriff Johnson's Motion to Dismiss is GRANTED, and Weedn's Petition is DISMISSED without prejudice to refiling.

IT IS SO ORDERED this 4th day of December, 2024.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE